IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL FISANICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:25-CV-00066-BL-JTA |
| | ) | |
| DIAMOND HANDS HOLDINGS, | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Plaintiff Michael Fisanick brings claims against Defendant Diamond Hands Holdings, LLC ("Diamond Hands") for breach of contract, breach of warranty, and slander of title, and brings claims against both Defendant Diamond Hands and Defendant Paul Day for quiet title and declaratory judgment arising out of Fisanick's purchase of land from Defendant Diamond Hands. (*See* Doc. 1). Defendant Diamond Hands counterclaimed against Fisanick for reformation and for attorney's fees under the Alabama Litigation Accountability Act ("ALAA"). (*See* Doc. 9). Defendant Diamond Hands has filed a motion for summary judgment on Fisanick's claims for breach of contract, breach of warranty, slander of title, quiet title, and declaratory judgment, and on its counterclaims against Fisanick for reformation and for attorney's fees under the ALAA. (*See* Docs. 29, 30). Defendant

Day filed a motion for summary judgment on Fisanick's claim for quiet title and declaratory judgment. (*See* Doc. 32). Fisanick filed a motion for partial summary judgment on his claims for quiet title and declaratory judgment and on Defendant Diamond Hand's counterclaim for reformation. (*See* Doc. 31). Fisanick also filed a motion to strike as hearsay a letter introduced by Defendant Diamond Hands from First American Title Insurance Company. (*See* Doc. 33).

For the reasons set forth below, the undersigned denies the Motions and Partial Motion for Summary Judgment and grants Plaintiff Fisanick's Motion to Strike Hearsay from the Record.

## I.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving

2

party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Further, when evaluating whether a genuine dispute of material fact exists, the court must view all evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

Once the moving party has met its burden, Federal Rule of Civil Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Id*. at 322.

Cross-motions for summary judgment do not alter the Rule 56 standard. *United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984). When considering cross-motions for summary judgment, district courts "should be very

3

careful in their analysis to ensure that the proper party receives the benefit of the summary judgment standard." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir.), *cert. denied*, 144 S. Ct. 103 (2023). When parties file cross-motions for summary judgment, a district court has "three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." *Id.*

## II.    Facts

This dispute concerns real property located at 0 Travis Wise Road in Samson, Alabama. Fisanick contends that he purchased three parcels, including a 39-acre tract west of Travis Wise Road, and Defendants Diamond Hands and Paul Day contend that the transaction covered only two parcels east of Travis Wise Road totaling 34 acres. The dispute begins with a Purchase Agreement executed on March 12, 2024, in which Defendant Diamond Hands purchased Parcel No. 0607350000004000 and Parcel No. 0607350000005002 (the "Undisputed Property") from Defendant Day. (Doc. 31-1 at 2). The warranty deed conveying the undisputed property to Defendant Diamond Hands (the "Diamond Hands Warranty Deed"), which was signed on April 12, 2024, states the legal description of the real property as follows:

4

Parcel I
The W 1/2 of the SW 1/4 of NW 1/4 of Section 35, and the SE 1/4 of the NE 1/4 of Section 34, all in Township 3N, Range 20, subject to a right of way for a public road. Lying and being situated in Geneva County, Alabama.

Parcel II
The North 15 acres of E 1/2 of SW 1/4 of NW 1/4, Section 35, ALSO a strip of land 110 yards long and 8 feet wide, more particularly described as follows: Beginning at the Southwest corner of E 1/2 of SW 1/4 of NW 1/4, Section 35 and running East 8 feet along South line of said E 1/2 of SW 1/4 of NW 1/4; thence North 110 yards; thence West 8 feet to West line of said E 1/2 of SW 1/4 of NW 1/4; thence South along said West line 110 yards to point of beginning. ALSO a portion of land in shape of R. Triangle in SE corner of W 1/2 of SW 1/4, more particularly described as follows: Beginning at the SE corner of W 1/2 of SW 1/4 of NW 1/4, Section 35 and running North 10 feet along East line of said W 1/2 of SW 1/4 of NW 1/4; thence in a Southwesterly direction to a point on South line of W 1/2 of SW 1/4 of NW 1/4 10 feet West of said Southeast corner of said W 1/2 of SW 1/4 of NW 1/4; thence East along said South line to point of beginning, located in T3N, R20E, Geneva County, Alabama.

(Doc. 31-2 at 2).  Subsequently, on July 6, 2024, a Land Purchase Agreement was executed between Fisanick and Defendant Diamond Hands which identifies the Undisputed Property.  (Doc. 30-5).  Fisanick disputes that the parcel numbers were in the agreement when he signed it and testified during his deposition that they were added after he signed the agreement because he "didn't see [them] there when [he] signed it." (Doc. 30-2 at 26).  Zachary Carver, the sole owner of Defendant Diamond Hands, testified during his deposition that he did not know who added the parcel

numbers and did not know why they appeared in different color ink stating that he had "no knowledge" because he "wasn't there." (Doc. 30-1 at 72, 78).

The parties further disagree about what Fisanick understood he was purchasing before closing. Defendant Diamond Hands relies on the Land Purchase Agreement, an MLS listing that lists the undisputed property as "34 acres of open farmland," and related Geneva County property tax records that confirm the undisputed property totals 34 acres and are both located to the east of Travis Wise Road. (Docs. 30-5, 30-6, 30-8, 30-10). However, Fisanick testified that he did not see the MLS listing and instead only saw a webpage that was sent to him listing the acreage for the property as 70 acres. (Doc. 30-2 at 13-14, 16). As to why he believed he was purchasing 70 acres, Fisanick testified that his realtor told him he was buying "tract one and tract two," which Fisanick understood to be land on the east side of Travis Wise Road and on the west side of Travis Wise Road; that the Land Purchase Agreement identified the address of the property as "0 Travis Wise Road, Samson, Alabama 36477, which he believed included all three parcels; and that, based on conversations with an acquaintance who was a surveyor, Fisanick's understanding was that he was purchasing all three parcels. (Doc. 30-2 at 35, 40, 58, 68, 88-89, 90-95).

Closing occurred on July 18, 2024, and the Corporation Form Warranty Deed ("Fisanick Warranty Deed") was recorded on July 22, 2024. (Doc. 30-13). The

Fisanick Warranty Deed described the two eastern parcels and included a legal description corresponding to the 39-acre tract west of Travis Wise Road (doc. 30-13); the legal description of the real property in the Fisanick Warranty Deed is seemingly identical to the legal description of the real property in the Diamond Hands Warranty Deed (*see* doc. 31-2 at 2). Defendants Diamond Hands and Day contend that the inclusion of the 39-acre tract was due to a clerical or scrivener's error made by the closing attorney, not Defendants Diamond Hands or Day. (Doc. 30-1 at 41, 94). However, Fisanick disputes Defendants Diamond Hands and Day's contention and maintains that it was his "understanding that [he was] getting all three parcels, including the disputed property" at the time he signed the Land Purchase Agreement. (Doc. 30-2 at 90).

Zachary Carver testified that he had no knowledge that the disputed property was included in the Fisanick Warranty Deed until he was served with a state court lawsuit initiated by Defendant Day against Defendant Diamond Hands and Fisanick (doc. 30-1 at 19-20); the state court lawsuit, which brought charges against Diamond Hands and Fisanick for Reformation and Unjust Enrichment, was filed in the Circuit Court of Geneva County, Alabama, on December 3, 2024 (doc. 31-6). Carver testified that, after the discrepancy in the Land Purchase Agreement and the Fisanick Warranty Deed was discovered, a Corrective Warranty Deed was executed which purported to correct the legal description in the Fisanick Warranty Deed to remove

7

the disputed property because it "was a very logical thing that all parties should have done." (Doc. 30-1 at 92, 93, 96). When asked whether he discussed the Corrective Warranty Deed with Fisanick, Carver stated "I did not, no." (Doc. 30-1 at 93). Three days after the state court lawsuit was initiated, Carver sent a Facebook message to Fisanick stating "I'm going to make you regret being such an asshole." (Doc. 31-7 at 8). Further, Carver sent a message to Fisanick's pastor in which he stated:

> Hey Pastor Johnson. I wanted to make you aware that one of the members of your church Michael Fisanick is attempting to steal 40 acres of land from a 78 year old man in Alabama. When I go to look up this gentleman's page and his daughter['s] page on Facebook I can't help but notice what a poor representation they are for your community and for your church.
>
> I thought you may like to know that three law firms and the seller are having to sue this man in order to get him to release a fraudulent claim to a property deeded to him by a simple clerical mistake. He has repeatedly denied these law firms['] request to sign a corrective deed and is causing this elderly gentleman an immense amount of heartache.

(Doc. 31-7 at 9). On January 9, 2025, Defendant Day filed a Motion to Dismiss the state court lawsuit because "Diamond Hands … filed a Correct[ive] Warranty Deed"; the Corrective Warranty Deed was attached to the Motion to Dismiss as Day's Exhibit A. (*See* Doc. 31-8). Fisanick testified that, because of the issuance of the Corrective Warranty Deed, he hasn't "been able to get a loan on that property to build a house." (Doc. 30-2 at 78).

8

## III.    Discussion

### A. Fisanick's Motion to Strike Exhibit 14

As an initial matter, the court notes that, in its Motion for Summary Judgment, Defendant Diamond Hands references a letter from Fisanick's title insurance company in which it contends that "Fisanick acknowledged that he understood at closing he was purchasing only the two eastern parcels and that the western tract was never intended to be part of the sale." (Doc. 30 at 6) (citing doc. 31-14 at 3). The letter from First American Title Insurance Company dated December 3, 2024, that Defendant Diamond Hands references states that, as part of their investigation of Fisanick's insurance claim, Fisanick "confirmed that when [he] entered into the agreement to purchase the Property [he] understood that [he was] purchasing the Eastern Parcels, and not the Western Parcels." (Doc. 30-14 at 3). In his response, Fisanick asks the court to strike this letter as inadmissible hearsay because it "is an out-of-court, non-party statement that is being used for the truth of the matter asserted." (Doc. 33 at 13) (citing Rule 801, FED. R. EVID.). In its response, Defendant Diamond Hands contends that "the exhibit was cited for the limited and proper purpose of establishing Plaintiff's notice and state of mind prior to filing suit." (Doc. 35 at 7-8). Further, Defendant Diamond Hands argues that "[t]o the extent Exhibit 14 reflects Plaintiff's own statements made during the title-insurance claim process regarding his understanding of the transaction, those statements

9

constitute admissions of a party opponent under Federal Rule of Evidence 801(d)(2)." (Doc. 35 at 8).

The Eleventh Circuit has held that "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F. 3d 1283, 1293-94 (11th Cir. 2012) (internal citations omitted). Further, "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify to the matter at trial." *Id*. at 1294. However, if "the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement, [the court] may not consider the hearsay statement at the summary judgment phase." *Id*.

Here, as discussed further herein, during his deposition, Fisanick asserted that he understood "that [he was] getting all three parcels, including the disputed property" at the time he signed the Land Purchase Agreement. (Doc. 30-2 at 90). As such, since Fisanick contradicted his statement during his sworn deposition, the court may not consider the hearsay statement at this summary judgment phase. Further, as the Eleventh Circuit has stated, "[t]he possibility that the declarant might change his sworn deposition testimony and admit to the truth of the hearsay statement amounts only to 'a suggestion that admissible evidence might be found in the future,' which 'is not enough to defeat a motion for summary judgment.'" *Jones*,

10

683 F.3d at 1294 (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)).

Accordingly, the court finds that Fisanick's Motion to Strike Exhibit 14 is due to be granted.

**B. Defendant Diamond Hands' Motion for Summary Judgment on Fisanick's Breach of Contract, Breach of Warranty, and Slander of Title Claims**

As the court explains below, viewing the facts in the light most favorable to Fisanick, a genuine issue of material fact exists regarding a central factual assertion underpinning these claims—whether Fisanick's understanding and intent was that he was purchasing the three tracts of land.

**1. Breach of Contract**

Under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020).

Defendant Diamond Hands argues that no genuine issue of material fact exists as to the terms of the Land Purchase Agreement because "Fisanick can produce no evidence of breach of the Land Purchase Agreement because the agreement was clear in its terms and Diamond Hands complied with those terms." (Doc. 30 at 8). Defendant Diamond Hands asserts that the "written Land Purchase Agreement …

11

unambiguously identifies only two parcels of farmland … for a total of 34 acres" and that the "document contains no reference to any additional acreage, parcel, or tract west of Travis Wise Road." (*Id*.).

Although Defendant Diamond Hands argues that the Land Purchase Agreement unambiguously identifies only two parcels of land and does not contain reference to any additional acreage, there is evidence in the record indicating that the Land Purchase Agreement did not contain numbers for the undisputed parcels at the time Fisanick signed it. When asked during his deposition whether he believed that the parcel numbers were added after he signed the Land Purchase Agreement, Fisanick stated "yes" and that he "didn't see [them] there when [he] signed it." (Doc. 30-2 at 26). Fisanick's belief is further bolstered by the face of the Land Purchase Agreement. The court notes that the Land Purchase Agreement contains two different ink colors; the address of the subject property appears in black ink as well as Fisanick's signature, while the parcel numbers are written in blue ink and initialed in blue ink by Zachary Carver. (*See* Doc. 30-5). Zachary Carver testified during his deposition that he did not know who added the parcel numbers and did not know why they appeared in different color ink stating that he had "no knowledge" because he "wasn't there." (Doc. 30-1 at 72, 78).

As indicated in Section II above, Defendant Diamond Hands relies on the Land Purchase Agreement, an MLS listing that lists the undisputed property as "34

acres of open farmland," and related Geneva County property tax records that confirm the undisputed property totals 34 acres and are both located to the east of Travis Wise Road. (Docs. 30-5, 30-6, 30-8, 30-10). However, as to his reasoning of why he believed he was purchasing 70 acres, Fisanick testified that his realtor told him he was buying "tract one and tract two," which Fisanick understood to be land on the east side of Travis Wise Road and on the west side of Travis Wise Road; that the Land Purchase Agreement identified the address of the property as "0 Travis Wise Road, Samson, Alabama 36477, which he believed included all three parcels; and that, based on conversations with an acquaintance who was a surveyor, Fisanick's understanding was that he was purchasing all three parcels. (Doc. 30-2 at 35, 40, 58, 68, 88-89, 90-95).

In viewing the evidence in the light most favorable to Fisanick, the court finds that a reasonable jury could find in favor of Fisanick on his breach of contract claim because Fisanick has produced evidence to show that, at the time of signing the Land Purchase Agreement, he believed he was purchasing the undisputed property as well as the disputed property and that his belief is further bolstered by his assertion that the parcel numbers did not appear on the agreement at the time of signing. However, Defendant Diamond Hands has presented evidence that the Land Purchase Agreement reflects the description in the MLS listing and related Geneva County property tax records, as well as evidence that Defendant Diamond Hands had no

knowledge of who added the parcel numbers to the agreement because Zachary Carver testified that he was not there.

Accordingly, because the parties present conflicting evidence as to whether the parcel numbers were present on the Land Purchase Agreement at the time Fisanick signed it, the court finds that genuine issues of material fact exist and Defendant Diamond Hands is not entitled to summary judgment on this claim.

## 2. Breach of Warranty

Under Alabama law, "[i]n order to sustain a cause of action under breach of warranty, [a] plaintiff must prove the existence of such warranty, breach, and proximate causation of damages." *Clark v. Allied Healthcare Products, Inc.*, 601 So. 2d 902, 903 (Ala. 1992) (quoting trial court's order) (internal quotations omitted).

Defendant Diamond Hands contends that no genuine issue of material fact exists as to the warranty covenant. Defendant Diamond Hands asserts that the Fisanick Warranty Deed has a clerical error in it because it "mistakenly included 'the SE 1/4 of the NE 1/4 of Section 34,' a separate 39-acre tract west of Travis Wise Road." (Doc. 30 at 13). Defendant Diamond Hands contends that, "[u]pon discovering the clerical error, Diamond Hands promptly executed and recorded a Corrective Warranty Deed to remove the unintended reference *and restore the record to match the parties' original agreement*." (Doc. 30 at 13) (emphasis added).

14

Further, Defendant Diamond Hands asserts that because it "conveyed exactly what the parties intended and promptly corrected the record to reflect that intent, there is no factual basis for a claim that Fisanick's title or possession has been disturbed." (Doc. 30 at 13-14).

While Defendant Diamond Hands asserts that it conveyed exactly what the parties intended and promptly corrected the record to reflect that intent, Fisanick, in his deposition, indicated that it was his "understanding that [he was] getting all three parcels, including the disputed property" at the time he signed the Land Purchase Agreement. However, as stated above, Defendant Diamond Hands contends that the inclusion of the 39-acre tract was due to a clerical or scrivener's error made by the closing attorney, not Defendant Diamond Hands (doc. 30-1 at 41, 94), and, after discovering the inclusion of the disputed property, Zachary Carver testified that a Corrective Warranty Deed was executed which purported to correct the legal description in the Fisanick Warranty Deed to remove the disputed property because it "was a very logical thing that all parties should have done." (Doc. 30-1 at 92, 93, 96).

In viewing the evidence in the light most favorable to Fisanick, the court finds that a reasonable jury could find in favor of Fisanick on his breach of warranty claim because Fisanick has produced evidence to show that, at the time of signing the Land Purchase Agreement, he believed he was purchasing the undisputed property as well

15

as the disputed property. However, Defendant Diamond Hands has presented evidence that the Land Purchase Agreement reflects the true intention of the parties at the time of signing. Accordingly, because the parties present conflicting evidence as to what their intent was at the time Fisanick signed the Land Purchase Agreement, a genuine issue of material fact exists, and Defendant Diamond Hands is not entitled to summary judgment on this claim.

### 3. Slander of Title

The Supreme Court of Alabama has stated that, in Alabama, the elements of a slander of title action are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or title thereof; and (6) that special damages were the proximate result of such publication[.]

*Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (quoting *Womack v. McDonald*, 219 Ala. 75 at 76-77, 121 So. 57 (1929).

Defendant Diamond Hands asserts that "Fisanick cannot establish ownership of the property he claims was 'slandered,'" that the disputed property "was never part of the Land Purchase Agreement, never lawfully conveyed to Fisanick, and remains titled to its prior owner, Paul Day." (Doc. 30 at 16). Further, Defendant Diamond Hands contends that there is "no evidence that Diamond Hands published any false statements," that there is "no evidence of malice," and that "Fisanick has

16

produced no evidence of special damages proximately caused by the corrective deed." (Doc. 30 at 17-18).

As to Defendant Diamond Hands' assertion that Fisanick cannot establish ownership of the property he claims was slandered, there exists in the record a genuine dispute due to the Fisanick Warranty Deed including the disputed property and Fisanicks' own assertion that he understood "that [he was] getting all three parcels, including the disputed property" at the time he signed the Land Purchase Agreement. (Doc. 30-2 at 90). Likewise, a genuine dispute as to evidence that Defendant Diamond Hands published false statements exists in the record. While Defendant Diamond Hands asserts that the Corrective Warranty Deed "truthfully reflects the parties' agreed-upon transaction" (doc. 30 at 17), as stated above, Fisanick believed he was getting all three parcels, including the disputed parcel, when he signed the Land Purchase Agreement. Further, Fisanick contends that Defendant Diamond Hands took "unilateral 'corrective' action without the knowledge or consent of Fisanick," and, as such, Defendant Diamond Hands' actions rendered the Corrective Deed "false," (doc. 33 at 18-19). Fisanick's argument is further bolstered by Zachary Carver's deposition in that, when asked whether he discussed the corrective deed with Fisanick, Carver stated "I did not, no." (Doc. 30-1 at 93).

As to Defendant Diamond Hand's assertion that there is no evidence of malice because Defendant "Diamond Hands acted in good faith," Fisanick disputes this claim by pointing to evidence of messages sent by Zachary Carver. Fisanick includes what he purports to be a Facebook message from Zachary Carver sent to Fisanick three days after the complaint was filed in state court, in which Carver states "I'm going to make you regret being such an asshole." (Doc. 31-7 at 8). Further, Fisanick includes what he purports to be a message sent to his pastor by Zachary Carver in which Carver states "Hey Pastor Johnson. I wanted to make you aware that one of the members of your church Michael Fisanick is attempting to steal 40 acres of land from a 78 year old man in Alabama" and that, when he looked at Fisanick and Fisanick's daughter's Facebook page, Carver couldn't "help but notice what a poor representation they are for [Pastor Johnson's] community and [Pastor Johnson's] church." The court finds that, when viewing these facts in the light most favorable to Fisanick, a reasonable jury could conclude that these facts show malice in that Defendant Diamond Hands made these statements to both Fisanick and Fisanick's pastor during pending state court litigation prior to executing the Fisanick Corrective Warranty Deed.

As to Defendant Diamond Hand's assertion that "Fisanick has produced no evidence of special damages proximately caused by the corrective deed," Fisanick disputes this claim by stating that Fisanick "has been unable to obtain a loan on the

18

Subject Property in order to build a house." (*See* Doc. 30-2 at 78) ("I haven't been able to get a loan on that property to build a house."). Thus, the court finds that the record contains evidence from which a reasonable jury could infer that Fisanick owned the disputed property, that Defendant Diamond Hands published false statements, that there is evidence of malice, and that Fisanick has suffered special damages. Accordingly, because the parties present conflicting evidence as to Fisanick's claim for slander of title, a genuine issue of material fact exists, and Defendant Diamond Hands is not entitled to summary judgment on this claim.

### 4. Defendants Diamond Hands and Day and Plaintiff Fisanick's Cross Motions for Summary Judgment on Fisanick's Quiet Title and Declaratory Judgment Claim

The Supreme Court of Alabama has held that "[t]o establish a prima facie case in a quiet-title action, the plaintiff must prove that he or she is in peaceable possession of the real property." *Childers v. Darby*, 163 So. 3d 323, 327 (Ala. 2014) (citing § 6-6-540, Ala. Code 1975). "[P]eaceable possession may be either actual or constructive." *Id*. at 328. "Actual possession, or possession in fact, exists when the thing is in the immediate occupancy of the party, or his agent or tenant." *Id*. (Internal citations omitted). "Constructive possession … is that possession which the law annexes to the legal title or ownership of property, when there is a right to the immediate actual possession of such property, but no actual possession" and "[w]ith regard to constructive possession, a person demonstrates that he or she is in

19

constructive possession of real property if he or she has a legal estate in fee in the real property and no one is in actual possession of the property." *Id*. (Citing *Hinds v. Slack*, 293 Ala. 25, 299 So. 2d 717 (1974)). Further, the Supreme Court of Alabama has stated that "[f]or a court to have jurisdiction to issue a declaratory judgment, '[t]here must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief.'" *Riley v. Boles*, 394 So. 3d 543, 347 (Ala. 2024) (quoting *State ex rel. Baxley v. Johnson*, 293 Ala. 69, 73, 300 So. 2d 106, 110 (1974)).

Fisanick seeks a Motion for Partial Summary Judgment on his claims against Defendant Diamond Hands and Defendant Day for quiet title and declaratory judgment. (Doc. 31 at 13). The same factual dispute discussed above underpins Fisanick's quiet title and declaratory judgment claims. Defendant Diamond Hands contends that "Fisanick never owned or possessed the [disputed property]," that Fisanick "continues to hold unchallenged title to the [undisputed property]," and that the record shows no "actual, justiciable controversy." (Doc. 30 at 20-21). As such, Defendant Diamond Hands contends that summary judgment should be entered in its favor on Fisanick's claims for quiet title and declaratory judgment. However, as stated herein, the court finds that the record establishes a bona fide, justiciable controversy as to which party actually possesses record title to the disputed property. Further, because the issue of which party possesses record or peaceable title turns

20

on disputed evidence in the record, neither actual possession or constructive possession can be established as a matter of law and, as such, remains a question for a trier of fact.  Moreover, Defendant Day adopts and incorporates the arguments set forth in Defendant Diamond Hands' Motion for Summary Judgment.  (*See* Doc. 32 at 2).

Accordingly, in viewing the facts in the light most favorable to the non-moving party on each motion, a genuine issue of material fact exists such that no party is entitled to summary judgment on these claims.

### 5. Diamond Hands and Fisanick's Cross Motion for Summary Judgment on Diamond Hand's Reformation Counterclaim

The same factual dispute discussed above underpins Diamond Hand's reformation counterclaim.  In its counterclaim, Diamond Hands "seeks Reformation, pursuant to Alabama Code § 35-4-150 et seq. of the Corporation Form Warranty Deed dated July 18, 2024, … to remove the SE 1/4 of  the NE 1/4 of Section 34, which is Parcel 34-06-08-34-0-000-006.000 consisting of 39 acres." (Doc. 9 at 10). Diamond Hands contends that the "error in the description [of the Corporation Form Warranty Deed dated July 18, 2024,] establishes mutuality of mistake" and that the "aforementioned deed does not express the true intent of the parties and [Diamond Hands] is asking this Court to reform the instrument to express the true intent of the parties." (Doc. 9 at 11).

21

Section 35-4-150 of the Code of Alabama states:

> Any person claiming title to land directly or remotely from the grantee in a deed, mortgage, or other conveyance containing an erroneous description, may maintain a civil action in a circuit court for the reformation of such deed, mortgage, or other conveyance and shall be entitled to relief in all cases in which the grantee in the deed, mortgage, or other conveyance containing an erroneous description would be entitled to relief.

Additionally, Section 35-4-153 of the Code of Alabama states:

> When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage, or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value.

Diamond Hands asserts that the "undisputed record establishes that the Corporation Warranty Deed recorded on July 22, 2024, mistakenly included [the disputed property]" and that the disputed property "was never part of the Land Purchase Agreement, the MLS Listing, or the negotiations between the parties." (Doc. 30 at 22). Diamond Hands contends that "Fisanick's own correspondence with his title insurer further confirms that the original deed failed to reflect the parties' true agreement." (Doc. 30 at 23). The letter from First American Title Insurance Company dated December 3, 2024, that Diamond Hands references states that, as part of their investigation of Fisanick's insurance claim, Fisanick "confirmed that when [he] entered into the agreement to purchase the Property [he] understood

22

that [he was] purchasing the Eastern Parcels, and not the Western Parcels." (Doc. 30-14 at 3). However, as stated above, the court finds that Fisanick's Motion to Strike Exhibit 14 is due to be granted, and, as such, the court does not consider the letter from Fisanick's title insurance company. Moreover, Fisanick contends that, even if the court does not find that an issue of fact exists regarding the parties' mutual mistake, the "Defendants would still not be entitled to summary judgment due to their unclean hands. Namely, Defendants' acts of preparing, executing, and recording a 'corrective' deed that slandered Fisanick's title." (Doc. 33 at 17-18).

The Supreme Court of Alabama has noted that "'[t]he general rule in Alabama is that a court may exercise its equitable powers to reform a deed to make it conform to the intention of the parties.'" *Fadalla v. Fadalla*, 929 So. 2d 429, 434 (Ala. 2005) (quoting *Powell v. Evans*, 496 So. 2d 723, 725 (Ala. 1986)). "One of the grounds for reformation of a deed is mutual mistake of the parties" and a "mutual mistake exists when the parties have entered into an agreement, but the deed does not express what the parties intended under the agreement." *Id*. (Citations omitted). Further, "[i]n determining whether a mutual mistake exists, '[t]he initial factual question is, of course, what the parties intended the instruments to express at the time they were executed.'" *Id*. (quoting *Jim Walter Homes, Inc. v. Phifer*, 432 So. 2d 1241, 1242 (Ala. 1983)).

23

Here, as stated above, the present record contains competing evidence of a genuine issue of material fact pertaining to the intent of the parties at the time of signing the Land Purchase Agreement.  While Diamond Hands contends that the "corrective deed executed by Diamond Hands properly removed the erroneous legal description and brought the recorded instrument into alignment with the parties' intent" (doc. 30 at 23), Fisanicks' own assertion that he understood "that [he was] getting all three parcels, including the disputed property" (doc. 30-2 at 90) at the time he signed the Land Purchase Agreement creates a genuine issue of material fact as to what the parties intended at the time of signing the Land Purchase Agreement.

Fisanick asserts that Diamond Hands and Day's "unclean hands bar them from seeking any equitable remedy from this court" because "a party seeking reformation must have clean hands to do so." (Doc. 31 at 8-9) (citing *Odom v. Se. Supply Header, LLC*, 675 F. Supp. 2d 1105, 1119-20 (S.D. Ala. 2009)).  Fisanick contends that "by preparing, executing, and recording the Corrective Deed without Fisanick's knowledge or consent, Day and Diamond Hands intended to circumvent the judicial reformation process they both knew was required under Alabama law" and that "[s]uch misconduct was willful and morally reprehensible in light of Day and Diamond Hands' knowledge of the facts, and therefore constitutes unclean hands." (Doc. 31 at 11).  Diamond Hands asserts that Fisanick's "unclean-hands theory rests entirely on Diamond Hands' execution of a corrective deed addressing an

24

acknowledged discrepancy between the deed's legal description and the transaction document." (Doc. 35 at 6). Further, Day asserts that "recording of the corrected deeds and Scrivener's Affidavit of Attorney David Snoody consists of, at most, a technical error, not intentional fraud or bad faith." (Doc. 37 at 7).

Fisanick contends that Day and Diamond Hands "both knew that they needed Fisanick's consent to reform his deed absent a court order." (Doc. 31 at 10). To establish this argument, Fisanick points to the state court action, in which Day stated that Fisanick "has refused, after multiple requests by [Day], to cooperate in correcting [the] error and manifested his intent to deprive [Day] of ownership of [the disputed property]." (Doc. 31-6 at 4-5). Further, Fisanick relies on Diamond Hands' email to Fisanick's pastor, in which he stated that Fisanick "has repeatedly denied … law firms['] request to sign a corrective deed." (Doc. 31-7 at 9). Day, relying on the Land Purchase Agreement that includes only the two undisputed properties, the Corrective Warranty Deed, and the Scrivener's Affidavits, contends that he "has acted, not with unclean hands, but as any property owner and citizen would, by contacting an attorney for assistance." Day further asserts that his conduct in "retaining an attorney to correct a scrivener's error within a property description cannot and should not be misconstrued as fraud, bad faith or intentional wrongdoing." (Doc. 37 at 8-9).

25

The Supreme Court of Alabama has recognized that "[t]he purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when the party's own wrongful conduct renders the assertion of such legal rights 'contrary to equity and good conscience.'" *J&M Bail Bonding Co. v. Hayes*, 748 So. 2d 198, 199 (Ala. 1999) (quoting *Draughon v. General Fin. Credit Corp.*, 362 So. 2d 880, 884 (Ala. 1978)).   As stated above, the record here consists of conflicting evidence that creates a genuine issue of material fact to be presented to a jury on the issue of Fisanick's and Diamond Hands and Day's intent and understanding regarding the tracts of land included in the sale.  While Fisanick relies on Diamond Hands and Day's recording of the corrective warranty deed and Diamond Hands' communication with Fisanick's pastor, Diamond Hands and Day rely on their obtaining a corrective warranty deed after discovering that a scrivener's error existed that created a discrepancy between Fisanick's warranty deed description and the Land Purchase Agreement.  Accordingly, because the parties present conflicting evidence as to Fisanick's claim that Diamond Hands and Day's unclean hands bar Reformation, a genuine issue of material fact exists, and Diamond Hands is not entitled to summary judgment on this claim.

Accordingly, because the parties present conflicting evidence as to Diamond Hands' claim for Reformation, a genuine issue of material fact exists, and neither Diamond Hands nor Fisanick are entitled to summary judgment on this claim.

### 6. Diamond Hands' Motion for Summary Judgment on its Counterclaim under the Alabama Litigation Accountability Act

The same factual dispute discussed above underpins Diamond Hands' ALAA counterclaim. Diamond Hands asserts that Fisanick's "lawsuit violates the Alabama Litigation Accountability Act because none of the evidence supports granting [Fisanick] a 39-acre windfall and [Fisanick] has no reasonable basis for believing he is entitled to 39 additional acres." (Doc. 9 at 12). The ALAA provides, in pertinent part, that

> in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part[.]

§ 12-19-272(a), Ala. Code 1975. However, as stated above, the court finds that a genuine issue of material fact exists for determination by a jury. At this stage of litigation, Fisanick has presented evidence to the court that supports his claim, including the Fisanick Warranty Deed and Fisanick's deposition testimony that he believed he was purchasing all three parcels at the time of signing the Land Purchase Agreement. Accordingly, because the parties present conflicting evidence as to Diamond Hands' claim under the ALAA, and in viewing the facts in the light most favorable to Fisanick, a genuine issue of material fact exists, and Diamond Hands is not entitled to summary judgment on this claim.

27

## IV.   Conclusion

Because the court finds that genuine issues of material fact exist in the record as to each party's claim for summary judgment, judgment as a matter of law is not proper at this state of litigation.  Accordingly, it is hereby **ORDERED** as follows:

1. Fisanick's Motion to Strike Exhibit 14 (doc. 33) is **GRANTED;**

2. Fisanick's Motion for Partial Summary Judgement (doc. 31) is **DENIED**;

3. Diamond Hands' Motion for Summary Judgment (doc. 29) is **DENIED**; and

4. Day's Motion for Summary Judgment (doc. 32) is **DENIED**.

This case shall proceed to trial on all claims and counterclaims.

**DONE** and **ORDERED** on this the 7th day of July, 2026.

**BILL LEWIS**
UNITED STATES DISTRICT JUDGE